Opinion for the court filed by Circuit Judge LOURIE. Opinion concurring in part and dissenting in part filed by District Judge O’MALLEY.
LOURIE, Circuit Judge.
Ormco Corporation (“Ormco”) appeals from the decision of the United States District Court for the Central District of California granting summary judgment in favor of Align Technology, Inc. (“Align”) that the asserted claims of Ormco’s U.S. Patents 6,616,444 (“the '444 patent”), 6,244,861 (“the '861 patent”), 5,683,243 (“the '243 patent”), and 5,447,432 (“the '432 patent”) (collectively, the “Ormco patents”) were not infringed and are invalid. Align cross-appeals from the decision of the trial court granting summary judgment of invalidity of certain claims of Align’s U.S. Patent 6,398,548 (“the '548 patent”) in favor of Ormco and Ormco’s subsidiary, Allesee Orthodontic Appliances, Inc. (“AOA”). Because the court correctly granted summary judgment as to some but not all of the claims of the Ormco patents, we affirm in part and reverse in part the judgment as to the Ormco patents. Because the court correctly granted summary judgment of invalidity of the *1311 specified claims of the '548 patent, we affirm that judgment.
BACKGROUND
Ormco filed suit on January 6, 2003, alleging that Align’s Invisalign® process infringed the '861, '243, and '432 patents. Ormco later amended its complaint to allege infringement of the '444 patent as well. Ormco alleges infringement of claims 1-5 and 8-79 of the '444 patent; claims 1, 3, 4, 9-12, and 16-18 of the '861 patent; claims 1 and 2 of the '243 patent; and claims 1, 9, and 10 of the '432 patent. The Ormco patents relate to the computer-aided design and manufacture of custom orthodontic appliances. They share a common specification, which is also shared with additional patents not asserted in this suit, including U.S. Patent 5,431,562 (“the '562 patent”). The '562 patent is a parent of the '243 patent, the '861 patent, and the '444 patent. The application leading to the '562 patent was filed on the same day as the application leading to the '432 patent.
Align counterclaimed for declaratory judgment of noninfringement and invalidity and also alleged infringement by Ormco and AOA of U.S. Patent 6,554,611 (“the '611 patent”) and the '548 patent. The '611 and '548 patents relate to the use of a series of individual orthodontic appliances to incrementally reposition teeth.
In a May 13, 2004, Order, the trial court granted Align’s motion for summary judgment of noninfringement. Ormco Corp. v. Align Tech., Inc., No. 03-cv-00016, slip op. (C.D.Cal. May 13, 2004). In that Order, the court found that statements in the shared specification of the Ormco patents, the prosecution history of the '562 patent, the prosecution history of the abandoned 07/775,589 application (of which the '432 patent is a continuation-in-part), and the prosecution history of the '432 patent limited the claims of the Ormco patents to a process in which final treatment positions for teeth are automatically determined. The court then determined that there were no genuine issues of material fact precluding summary judgment. The court accordingly granted summary judgment of noninfringement in favor of Align because Align’s system relies on “skilled operators” rather than computers to determine the finish positions of the teeth.
The court also granted Align’s motion for summary judgment of nonenablement of Ormco’s patents on August 20, 2004. Ormco Corp. v. Align Tech., Inc., No. 03-cv00016, slip. op. (C.D.Cal. Aug. 20, 2004). In determining whether Align had presented clear and convincing evidence of nonen-ablement, the court relied on its prior ruling that “the scope of Ormco’s claims [was] limited to ‘automatic computer determination of the finish positions of teeth.’ ”
In reviewing the evidence, the court first noted testimony from the inventors indicating that Ormco software had never been used to automatically determine tooth positions without any human intervention. The court found that additional testimony from one inventor that the unmodified output of Ormco’s first software design, the Elan, had been used to generate appliances for actual patients was not credible because of the lack of corroboration from documents or other sources. The court also found that the statements of Ormco’s expert, John Grubb, that Elan had been used to treat patients without operator intervention were also not credible because his expert report lacked sufficient foundation to support such an opinion. The court further found other statements from the inventors unpersuasive because they were equivocal and indicated at best that the Elan software might be used to treat patients without human adjustment of tooth positions, but not that the software had *1312 actually been used in such a way. The court also found testimony that Ormco’s new software, the Insignia, could be used to automatically generate orthodontic appliances similarly unpersuasive in light of the fact that the manual override had been used in all forty of the test cases using that software.
Finally, the court granted summary judgment of invalidity of claims 1-3 and 11-13 of Align’s '548 patent in favor of Ormco and AOA on February 25, 2005. Ormco Corp. v. Align Tech., Inc., No. 03-cv-00016, slip. op. (C.D.Cal. Feb. 25, 2005). The court first construed the claim terms “system” and “geometry,” using a dictionary to give them their ordinary meaning. The court then determined that Dr. Rains’ use of the STARS system for orthodontic treatment anticipated all of the limitations of claims 1-3 and 11-13 of the '548 patent. The court rejected Align’s arguments that a “system” required that the orthodontic appliances be produced at the same time and that “markfing]” the appliances required that the marks indicate order of use to the patient, rather than the orthodontist.
Ormco timely appealed, and Align timely cross-appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).
DISCUSSION
We review de novo a grant of summary judgment by a district court. Optivus Tech., Inc. v. Ion Beam Applications S.A., 469 F.3d 978, 984 (Fed.Cir.2006). Summary judgment is appropriate if “there is no genuine issue as to any material fact and ... the - moving party is entitled to judgment as a matter of law.” Fed. R.Civ.P. 56(c). “When ruling on a motion for summary judgment, all of the nonmov-ant’s evidence is to be credited, and all justifiable inferences are to be drawn in the nonmovant’s favor.” Caterpillar Inc. v. Deere & Co., 224 F.3d 1374, 1379 (Fed. Cir.2000).
A. Noninfringement
“We review a district court’s grant of summary judgment of non-infringement without deference.” O2 Micro Int’l, Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1359 (Fed.Cir.2006). Our de novo review of summary judgment of noninfringement requires two steps — claim construction, which we review without deference, and infringement, which we review to determine whether there was no genuine issue of material fact. See Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1304 (Fed.Cir.1999).
On appeal, Ormco argues that the district court erred when it interpreted the claims to require automatic determination of finish tooth positions, contrary to their plain language, and when it failed to tie that interpretation to specific language in each claim. Ormco further argues that the statements referenced by the court to support its application of the automatic determination limitation do not meet the standard for an intentional disavowal of claim scope and that statements from the prosecution history of the '562 patent are limiting only as to the particular claim language with respect to which they were made (e.g., “ideal dental archform”).
In response, Align argues that a paten-tee can make a disavowal of scope as to the general nature of an invention that in turn limits all claims even though specific claim language is not being interpreted. Align argues that the statements in the Ormco patents’ specification and the prosecution history of the '562 patent constitute such a disclaimer. In the alternative, Align argues that all of the asserted claims except claims 37-40, 45, and 69 of the '444 patent contain express language that re *1313 quires a construction that includes the automatic determination limitation.
“It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude.” Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed.Cir.2005) (en banc) (citation and internal quotations omitted); see also Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed.Cir.1996) (“[W]e look to the words of the claims themselves ... to define the scope of the patented invention.”). However, “claims ‘must be read in view of the specification, of which they are a part,’ ” Phillips, 415 F.3d at 1315 (quoting Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed.Cir.1995) (en banc), aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)), and “[t]he construction that stays true to the claim language and most naturally aligns with the patent’s description of the invention will be, in the end, the correct construction,” id. at 1316 (quoting Renishaw PLC v. Societa’ per Azioni, 158 F.3d 1243, 1250 (Fed.Cir.1998)) (emphasis added).
Consistent with that precedent, we conclude that the district court correctly determined, as to most, but not all, of the asserted claims of the Ormco patents, that requiring automatic determination of finish tooth positions is a proper construction of the asserted claims. Interpreting most of the claims to require automatic determination of finish tooth positions “most naturally aligns with the patent’s description of the invention.” From the beginning of the common specification of the Ormco patents, it is clear that the inventors’ primary basis for distinguishing their invention was its high level of automation in the design of custom orthodontic appliances as compared to the prior art. In the Background of the Invention, the inventors stated, “In reality, the treatment of patients is in many cases more of an art than a science, with results ranging from poor to excellent, and generally variable.” '444 patent col.3 11.7-10. The inventors specifically stated that the prior art had encountered difficulties in “the task of developing an automated system that includes reliable and efficient decision making algorithms and techniques for automatically determining an ideal finish position of the teeth.” Id. at col.3 11.17-22 (emphases added).
The specification then indicates a clear emphasis in the patent on removing the referenced variability in the orthodontic treatment process by relying on a predetermined set of calculations rather than human judgment to determine final tooth positions. “A primary objective of the present invention is to provide a practical, reliable and efficient custom appliance automated design and manufacturing system and methods of automatically designing custom orthodontic appliances and treating patients therewith.” '444 patent col.3 11.41 — 45 (emphases added). “In accordance with the preferred embodiment of the present invention, there is provided a computerized system and method with which finish positions of the teeth of a patient are derived from digitized information of anatomical shapes of the patient’s mouth .... ” '444 patent col.4 11.16-20 (emphases added). “The computer 30b at the appliance- facility 13 calculates, based on the digitized information 26, the final position of the patient’s teeth ....” '444 patent col.14 11.6-8 (emphases added).
Nowhere does the specification suggest or even allow for human adjustment of the computer-calculated tooth finish positions. Statements in the specification cited by Ormco to support human participation in the process are limited to input from the orthodontist and/or computer operator at the start of the process (i.e., when particular “landmarks,” data points related to *1314 teeth and jaw anatomy and geometry, are selected for input into the automatic calculation process) and not related to determination of tooth finish positions. See, e.g., '444 patent col. 10 1. 63-col. 11 1.2, col. 13 11.51-57. The first of those passages again emphasizes that the invention “applies automated decision making processes in the appliance design.” Id. at col.10 11.66-67.
The specification goes on to state, “In the computer analysis procedure (95), the digitized information input by the input procedure (94) is analyzed to calculate the finish position of the teeth, so that the custom appliance (25) can be designed in computerized design procedure (96) and manufactured in computer controlled manufacturing procedure (97).” Id. at col.24 11.25-30 (emphases added). Further, the detailed recitation of the formulas and algorithms for automatic calculation of final tooth positions that follows, see id. at col.39 1.41-col. 53, 1.52, concludes with the statement, “At this point, the final positions of the maxillary teeth have been calculated, and thus, the finish positions of all of the teeth.” Id. at col.53 11.50-52. There is no discussion of operator or orthodontist review or adjustment of those finish positions or of the bases on which such review and adjustment might be made. Instead, the specification turns to a description of the “Appliance Design Procedure,” which utilizes the finish tooth positions that have been automatically determined. The specification thus provides clear indication that the invention is in the automatic determination of tooth position.
While all those statements by the inventors in the specification of the Ormco patents, standing alone, may not be conclusive in showing that the claims require completely automatic determination of final tooth positions, those in the prosecution history make it even clearer.. “[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.” Phillips, 415 F.3d at 1317 (emphasis added). Thus, we turn to the prosecution history of the Ormco patents, and other patents from the same family, to determine if there are statements there that should further inform our construction of the claims. As the district court correctly observed, we have held that “prosecution disclaimer may arise from disavowals made during the prosecution of ancestor patent applications.” Omega Eng’g, Inc. v. Raytek Corp., 334 F.3d 1314, 1333 (Fed.Cir.2003). When the application of prosecution disclaimer involves statements from prosecution of a familial patent relating to the same subject matter as the claim language at issue in the patent being construed, those statements in the familial application are relevant in construing the claims at issue. See, e.g., Wang Lab., Inc. v. Am. Online, Inc., 197 F.3d 1377, 1384 (Fed.Cir.1999); Jonsson v. Stanley Works, 903 F.2d 812, 818 (Fed.Cir.1990). In this case, the specifications of the prior '562 patent, which is the parent of three of the patents in issue, and all the presently litigated patents, have the same content. Thus, the prosecution history of the claims of application number 07/973,973, which led to the '562 patent, are relevant in construing the claims of the '432, the '243, the '861, and the '444 patents.
The claims of the parent 07/973,973 application were rejected by the United States Patent and Trademark Office (“PTO”) under 35 U.S.C. § 103 in an Office Action on September 13, 1993, based in part on U.S. Patent 5,011,405 to Lem-chen. In a Response on March 16, 1994, the inventors made a number of statements characterizing the Lemehen patent and seeking to distinguish their invention.
*1315 The first part of the Response describing Lemchen, noted by the district court, states:
Using such a CAD [computer-aided design] program in a conventional manner, as Lemchen describes, an operator would manipulate the tooth images to provide the desired occlusion. This would presumably involve some decision making by the operator. As the operator manipulates the images, the computer, under the control of the conventional CAD program, would perform the calculations that would generate data of the tooth movements made by the operator and thus of the finish positions of the teeth.
(emphases added). This passage illustrates the inventors’ characterization of the Lemchen prior art, viz., that it involves use of an operator. The inventors then distinguish between their automated design process and processes that are merely computer assisted and involve human input in a further characterization of the Lem-chen patent:
The Lemchen patent relies, to produce the calculations, on the conventional calculation techniques employed in generalized CAD software. This in turn relies on a user interactive interface by which an operator contributes human decision making powers to manipulate images until the operator is satisfied that finish tooth position criteria have been met.... However, with conventional CAD programs, the reliance on human decision making is heavy, and rigorous fully automated arrival at tooth finish positions is lacking.
(emphases added). The inventors thus distinguished Lemchen by emphasizing its reliance on an operator for the decision-making process.
Further statements by the inventors in arguing for allowance of their claims in their Response continued to characterize their method by which final tooth positions may be determined. They stated, “The present invention of applicants is directed toward the most complete and fully atito-mated method for orthodontic appliance design and manufacture made.” (emphasis added). None of the prior statements in the Response were limited to particular claims. Again, in a section entitled “Deriving Finish Positions from Derived Ideal Dental Archform,” the inventors argued, “The judgment, or decision making, on the acceptability of tooth positions must be imposed externally of Lemchen’s system. This leads to human error and inconsistencies from patient to patient. Lemchen does not disclose this being done automatically thereby avoiding such errors and inconsistencies.” In that same section, the inventors conclude, “Therefore, Lemchen, while primarily concerned with bracket placement, uses a user interactive computer system to calculate tooth finish positions, [but] applicants have provided a computerized system with the intelligence to decide for itself the best finish positions of the teeth.” (emphasis added). That statement was directed to amended claims 1-30, 35-38, and 65-72, but was not associated with particular language from those claims. Furthermore, the method of amended claim 1 included the step of “deriving with the computer tooth finish positions,” demonstrating that the same subject matter of automatic determination of finish tooth positions was included in those claims. In an effort to further bolster their arguments to the examiner, the applicants also submitted a Declaration from an orthodontist, Michael W. Scott. Dr. Scott’s declaration states, “In applicants’ overall method, it is a computer, not an orthodontist or an orthodontieally skilled computer operator that makes the decision on the finish positions in which the teeth are to be placed.”
*1316 With these and other similar statements from the prosecution history of the '562 patent in mind, we address the claims of the Ormco patents involved in this lawsuit. Ormco has asserted infringement of claims 1, 9, and 10 of the '432 patent; claims 1 and 2 of the '243 patent; claims 1, 3, 4, 9-12, and 16-18 of the '861 patent; and claims 10-17, 23-29, 30-36, 46-68, and 70-79 of the '444 patent.
All of the above claims require determining the finish positions of the teeth. E.g., '432 patent, claim 1 (“producing desired tooth position signals containing digitized data of desired positions of a plurality of the patient’s teeth”); '243 patent, claim 1 (“a computer programmed ... to calculate" finish positions of the teeth of the patient”); '861 patent, claim 1 (“determining treatment positions of the teeth”); '444 patent, claim 10 (“a computer programmed to apply at least some automated tooth position criteria to produce a digital model of the teeth of the scanned shapes in desired positions”). Although their claim language does not expressly recite automatic control of the finish tooth positioning, that is what they mean, and that is all that the specification describes; the specification does not support operator positioning.. Moreover, the prosecution of the '562 patent, with the same specification, makes clear that the inventors understood their invention to encompass only automatic positioning because they so argued in order to distinguish their claims over Lemchen. We are mindful of the precaution that we must not incorporate into the claims limitations only found in the specification. We are not doing so here, nor did the district court. We are interpreting the claims in light of the specification. The situation here involves specifications that in all respects tell us what the claims mean, buttressed by statements made during prosecution in order to overcome a rejection over prior art. Accordingly, to attribute to the claims a meaning broader than any indicated in the patents and their prosecution history would be to ignore the totality of the facts of the case and exalt slogans over real meaning. We thus agree with the district court that in light of the specification of the Ormco patents and statements from the prosecution history of the parent '562 patent, the claims specified above require automatic computer determination of the finish positions of the teeth without human adjustment of the final results.
Ormco has also asserted infringement of claims 1-5, 8, 9, and 18-22 of the '444 patent. Claims 2-5, 8, and 9 depend from independent claim 1. The method of claim 1 does include the limitation “through an operator interacting with a computer located remote from the orthodontic practitioner, altering the graphic representation to arrange a plurality of the teeth in relation to each other in accordance with the prescription, to produce a digital model of a desired arrangement of the teeth of the patient.” Ormco argues that the specific recitation of an operator in this clause differentiates this claim from other claims in which the operator is not mentioned and supports the scope of the claim to allow for the operator to select the finish tooth positions or at least aid in the process. We do not agree. The role of an operator in this claim and its dependent claims is only to help generate and enter the tooth data into the computer that is needed for the automatic process to operate. The operator does not determine the finish positions of the teeth; that is still done automatically. Thus the district court did not improperly construe claims 1-5, 8, and 9 of the '444 patent to require automatic determination of tooth positions.
The method of claim 18 includes the limitation of “a computer ... programmed to select geometric parameters on the patient’s teeth from the digitized *1317 data by operator-interaction and to produce a digital model of the teeth in desired positions.” Claims 19-22 of the '444 patent depend from independent claim 18. As with claim 1, the fact that a role for the operator is required by the claim language at the beginning of the process does not support Ormco’s argument that determination of finish tooth positions in claim 18 is not done automatically. Thus, in light of the specification of the Ormco patents and statements from the prosecution history of the '562 patent as a whole, “altering the graphic representation to arrange a plurality of the teeth in relation to each other ... to produce a digital model of a desired arrangement of the teeth of the patient” and “producing] a digital model of the teeth in desired positions” each require automatic computer determination of the finish positions of the teeth without human adjustment of the final results.
We reach a different conclusion with respect to claims 37-40, 45, and 69. The district court treated those claims in the same manner as all the others. Align argues that the methods of claims 37-40, 45, and 69 similarly relate to automatic design or automatic calculation of finish tooth positions. We do not agree. Those claims relate to the preliminary gathering and organization of tooth data as an aid to further unspecified orthodontic treatment or for use in creation of a digital model, not to the specific automatic determination of finish tooth positions. Such preliminary gathering and organization do not, by themselves, determine finish tooth positions. We therefore conclude that claims 37-40, 45, and 69 do not require automatic computer determination of finish positions of teeth, and that the district court thus erred in so concluding. However, each of the dependent claims 41-44 requires “manipulating the separate digital representations of the generated data in a computer to rearrange the shapes of the individual teeth” into “desired relative positions.” Such rearrangement requires determination of the finish positions of the teeth and therefore as with the other claims in suit discussed previously, automatic determination of those finish positions is implicit in those claims. Thus, in light of the specification of the Ormco patents and statements from the prosecution history of the '562 patent as a whole, “manipulating ... the individual teeth” into “desired relative positions” requires automatic computer determination of the finish positions of the teeth without human adjustment of the final results.
In summary, we conclude that all of the asserted claims of the Ormco patents, except claims 37-40, 45, and 69 of the '444 patent, require automatic computer determination of the finish positions of the teeth without human adjustment of the final results. Since Ormco does not challenge the district court’s finding that Align relies on skilled operators rather than a fully automated computerized process to determine finish positions of the teeth, we affirm the district court’s grant of summary judgment of noninfringement as to claims 1, 9, and 10 of the '432 patent; claims 1 and 2 of the '243 patent; claims 1, 3, 4, 9-12, and 16-18 of the '861 patent; and claims 1-5, 8-36, 41-44, 46-68, and 70-79 of the 1444 patent. However, because claims 37-40, 45, and 69 of the '444 patent do not require automatic computer determination of teeth finish positions, we reverse the district court’s grant of summary judgment of noninfringement as to those claims and remand for further proceedings consistent with this opinion.
We accept that Ormco’s argument, and that of the dissent, that the district court failed to conduct a claim construction in this case focusing on specific claim language, is not lacking in force. However, we review decisions, not opinions, see Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d *1318 1530, 1540 (Fed.Cir.1983), and when we are able to fully comprehend the specification, prosecution history, and claims and can determine that, to the extent we have indicated, the district court arrived at the correct conclusion, we need not exalt form over substance and vacate what is essentially a correct decision.
B. Nonenablement
Enablement is a question of law that we review de novo. Liquid Dynamics, Corp. v. Vaughan Co., Inc., 449 F.3d 1209, 1224 (Fed.Cir.2006). As this was a summary judgment determination, all facts must be construed in the light most favorable to the nonmoving party. The party alleging invalidity for lack of enablement bears the burden of proving by clear and convincing evidence that the specification of a challenged patent fails to teach one of ordinary skill in the art how to make the invention. See Union Carbide Chem. & Plastics Tech. Corp. v. Shell Oil Co., 308 F.3d 1167, 1186 (Fed.Cir.2002); Enzo Biochem, Inc. v. Calgene, Inc., 188 F.3d 1362, 1378 (Fed.Cir.1999).
As an initial matter, the district court’s grant of summary judgment of nonenablement hinged upon its construction of the claims of the Ormco patents. Because the court erred in construing claims 37-40, 45, and 69 of the '444 patent, we reverse the grant of summary judgment of nonenablement as to those claims and remand for further proceedings consistent with this opinion.
As for the other claims, Ormco argues that the determination of enablement should focus only on the specification of its patents rather than on its development work on its commercial Elan and Insignia software. In the alternative, Ormco argues that its evidence demonstrated that the Elan and Insignia products were capable of automatically determining final tooth positions. Align responds that an inventor’s inability to actually practice his invention is proof of lack of enablement, that mere uncorroborated inventor testimony on enablement is insufficient to create triable issues of fact, and that the method taught in the specification of the Ormco patents cannot determine useful tooth finish positions because it fails to account for the initial tooth positions and thus fails to address problems such as tooth collisions or excessive application of force.
We agree with the district court’s summary judgment on enablement. The district court reviewed deposition testimony of the inventors stating that the Elan and Insignia software incorporated the automatic determination aspect of the invention, but did not accept that assertion as sufficient to create triable issues of fact given other more specific admissions by the inventors. Ormco has implicitly conceded that the Elan and Insignia software represented attempts to follow the patents’ specifications by arguing that those products demonstrated enablement of the Orm-co patents.
But during his May 12, 2004, deposition, Dr. Andreiko, one of the inventors of the Ormco patents, testified that Ormco had never attempted to create a computerized system that automatically determined tooth positions without human decision making. He also testified that the manual override had been used on all of the approximately forty cases treated using the Insignia product and that, while it was a goal to have the software generate final tooth positions that would not require use of the override, variations in human anatomy had prevented the attainment of that goal. Dr. Andreiko was also unsure if the problems due to variations in human anatomy could be overcome. No convincing countering evidence was produced by Ormco.
*1319 If an inventor attempts but fails to enable his invention in a commercial product that purports to be an embodiment of the patented invention, that is strong evidence that the patent specification lacks enablement. Substantial doubt concerning the enablement of the invention was cast by the inventors in this case. The district court so concluded, and we have no reason to disagree. We thus affirm the summary judgment of nonenablement as to claims 1, 9, and 10 of the '432 patent; claims 1 and 2 of the '243 patent; claims 1, 3, 4, 9-12, and 16-18 of the '861 patent; and claims 1-5, 8-36, 41-44, 46-68, and 70-79 of the '444 patent because clear and convincing evidence establishes that a person of ordinary skill in the art did not and could not accomplish automatic computer determination of teeth finish positions based upon the Ormco patents’ specification.
C. Cross-Appeal
Anticipation is a question of fact, but, in reviewing a grant of summary judgment of invalidity for anticipation, we determine de novo whether the evidence creates genuine issues of material fact that should have precluded summary judgment. See Eli Lilly & Co. v. Zenith Goldline Pharm., Inc., 471 F.3d 1369, 1375 (Fed.Cir.2006); Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1327 (Fed.Cir.2001).
On cross-appeal, Align argues that the district court misconstrued the term “system” in claims 1-3 of the '548 patent in concluding that orthodontic appliances created by an iterative process could fulfill the requirements of that term. Align also argues that the district court erred in construing the language “marked to indicate their order of use” from claims 1 and 11 of the '548 patent because the court found that the information on order could be conveyed to the orthodontist rather than the patient. Finally, Align argues that there was no public use of Dr. Rains’ devices, particularly as to the “marked” limitation.
In response, Ormco argues that our recent decision in Ormco Corp. v. Align Technology, Inc., 463 F.3d 1299 (Fed.Cir.2006) (“Ormco I ”), requires that we affirm the district court’s decision. Ormco also argues that the district court’s construction of the “system” and “marking” language was correct and that the finding of anticipation by Dr. Rains’ work should thus be affirmed. Finally, Ormco argues that the district court erred in its evaluation of Dr. Harrell’s work, which also would have rendered Align’s claims obvious.
We agree with Ormco that under the law of the case doctrine, the decision of this court in Ormco I controls the outcome of the cross-appeal here, and we therefore affirm the district court’s summary judgment ruling that claims 1-3 and 11-13 of the '548 patent are invalid. “Under [the law of the case] doctrine a court adheres to a decision in a prior appeal in the same case unless one of three exceptional circumstances exist: (1) the evidence in a subsequent trial is substantially different; (2) controlling authority has since made a contrary decision of the law applicable to the issues; or (3) the earlier ruling was clearly erroneous and would work a manifest injustice.” Gould, Inc. v. United States, 67 F.3d 925, 930 (Fed.Cir.1995). Because none of those exceptional circumstances exists in this case, the doctrine applies.
In Ormco I, this court decided that claims 10 and 17 of Align’s '548 patent were invalid as obvious. Claim 10 is dependent on independent claim 1, and claim 17 is dependent on independent claim 11. Because claims 10 and 17 were found to have been obvious, the broader claims 1 and 11 must also have been obvious. *1320 Claims 2 and 3, and 12 and 13, of Align’s '548 patent are also dependent on independent claims 1 and 11, respectively. Thus, their validity can only be sustained based upon the language of the dependent claims themselves. In Ormco I, this court decided that claims 2 and 3 of Align’s '611 patent, which are dependent claims, were invalid as obvious. The language of claims 2 and 3 of the '611 patent is exactly the same as the language of claims 2 and 3 of the '548 patent. Furthermore, the language of claims 12 and 13 of the '548 patent differs from the language of claims 2 and 3 of the '611 patent only in that the word “method” replaces “system” and in that they depend on claims 11 and 12, respectively. Such a difference is not pat-entably significant. Therefore, claims 2 and 3 and 12 and 13 of the '548 patent must be invalid as obvious as well.
We thus affirm the district court’s grant of summary judgment of invalidity as to claims 1-3 and 11-13 of the '548 patent.
CONCLUSION
For the reasons stated, we affirm the district court’s grant of summary judgment of noninfringement and nonenablement as to claims 1, 9, and 10 of the '432 patent; claims 1 and 2 of the '243 patent; claims 1, 3, 4, 9-12, and 16-18 of the '861 patent; and claims 1-5, 8-36, 41-44, 46-68, and 70-79 of the '444 patent. We reverse the district court’s grant of summary judgment of noninfringement and nonenablement as to claims 37-40, 45, and 69 of the '444 patent and remand for further proceedings consistent with this opinion. Finally, we affirm the district court’s grant of summary judgment of invalidity as to claims 1-3 and 11-13 of the '548 patent.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED '