NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1353, -1378

LUMA CORPORATION,

Plaintiff-Appellant,

v.

STRYKER CORPORATION,

Defendant-Appellee,

and

KARL STORZ ENDOSCOPY-AMERICA, INC.,

Defendant-Cross Appellant.

Esha Bandyopadhyay, Perkins Coie LLP, of Menlo Park, California, for plaintiff-appellant.

Gregory J. Vogler, McAndrews, Held & Malloy, Ltd., of Chicago, Illinois, for defendant-appellee. With him on the brief were Timothy J. Malloy, Robert A. Surrette, and Merle S. Elliott.

Richard J. Basile, St. Onge Steward Johnston & Reens LLC, of Stamford, Connecticut, for defendant-cross appellant. With him on the brief was David W. Aldrich. Of counsel was Wesley W. Whitmyer, Jr.

Appealed from: United States District Court for the Southern District of West Virginia

Judge David A. Faber

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1353, -1378

LUMA CORPORATION,

Plaintiff-Appellant,

v.

STRYKER CORPORATION,

Defendant-Appellee,

and

KARL STORZ ENDOSCOPY-AMERICA, INC.,

Defendant-Cross-Appellant.

Appeal from the United States District Court for the Southern District of West Virginia in Case No. 02-CV-1132, Judge David A. Faber.

_____

DECIDED: April 10, 2008

_____

Before MAYER, LOURIE, and SCHALL, <u>Circuit Judges</u>.

LOURIE, <u>Circuit Judge</u>.

Luma Corporation ("Luma") appeals from the order of the United States District Court for the Southern District of West Virginia entering summary judgment of noninfringement of claims 14, 15, 17, 19, 29, 30, 32, and 34 of U.S. Patent 5,740,801 ("the '801 patent") and of invalidity of claims 44 and 45 of the '801 patent in favor of Stryker Corporation ("Stryker") and Karl Storz Endoscopy-America, Inc. ("KSEA") (collectively "appellees"). Because the district court made no error in construing the claims and in granting summary judgment, we <u>affirm</u>.

BACKGROUND

In September 2002, Luma sued appellees for infringement of the '801 patent. The '801 patent is entitled "Managing Information in an Endoscopy System," and describes and claims a system for acquiring images during a medical procedure. Two sets of claims from the '801 patent are at issue. The first set, claims 14, 15, 17, 19, 29, 30, 32, and 34, are referred to as the Preference Database claims. Only claims 14 and 29 are independent. Claim 14 is representative of the Preference Database claims:

> A system for acquiring images during a medical procedure and using the acquired images, comprising
> at least one input device for obtaining said images,
> at least one output device for using the images obtained by said input device to enable image data to be communicated to a medical practitioner,
> a preference database for pre-storing, for each one a plurality of users of said system, respective preference information that indicates one or more visual representations that said one of said plurality of users of said system prefers to be applied to said at least one output device together with said images obtained by said input device, <u>said one or more visual representations comprising graphical objects</u>, and
> a processor for receiving an indication of an identity of one of said users, who is currently using said system, and, responsive to said indication of said identity of said one of said users who is currently using said system, for retrieving said preference information for said one of said users pre-stored in said preference database, for combining said one or more visual representations with said images obtained by said input

device based on the preference information in said preference database that corresponds to said one of said users, and for applying said images to said at least one output device together with said one or more visual representations.

'801 patent col.48 ll.12-37 (emphasis added).

The second set, claims 44 and 45, are referred to as the Still Frame Buffer claims. Only claim 44 is independent:

A system for acquiring images during a medical procedure and using the acquired images, comprising
at least one input device for obtaining said images,
at least one output device for using the images obtained by said input device to enable image data to be communicated to a medical practitioner,
<u>a still frame buffer configured to temporarily store an image obtained by said at least one input device</u>,
a memory configured to store images obtained by said at least one input device on a long-term basis, and
a processor configured to receive a freeze command and in response thereto to freeze in said still frame buffer an image obtained by said at least one input device, and to receive a save command and in response thereto to save in said memory a frozen image.

'801 patent col.50 ll.26-40 (emphasis added).

The district court referred the claim construction issues to a special master. On February 3, 2006, the court adopted the special master's report construing the disputed terms with the exception of modifying the definition of "graphical objects" for greater clarity. The court construed the claim limitation "graphical objects" as follows: "a graphical object is a symbol and pertains to pictorial representations of data. Graphical objects are not text. Text is not a graphical object. A graphical object may include text. Text alone is not a graphical object." The special master's construction of "still frame buffer," adopted by the court, was "a storage for digital image data for a given period of time."

On February 21, 2006, the parties filed cross-motions for summary judgment. The district court decided the motions in a July 24, 2006 order. The court held that Luma had failed to raise a genuine issue of material fact regarding the presence of a database of preferences relating to graphical objects in the accused Stryker and KSEA products. The court thus granted summary judgment of noninfringement on the Preference Database claims in favor of appellees. The court also found that all of the limitations of claim 44 were anticipated by the prior art Advanced Technology Laboratories Ultramark 5 device and U.S. Patent 4,922,909 (the "Little patent"). In an August 15, 2006 order, the court clarified that the additional limitations of claim 45 were also disclosed in each of the prior art systems. The court thus granted summary judgment of invalidity of the Still Frame Buffer claims in favor of appellees.

On August 29, 2006, KSEA filed a motion for attorney fees that the district court denied on March 9, 2007.

Luma timely appealed, and KSEA timely cross-appealed the denial of its motion for attorney fees. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

I. Preference Database Claims

Luma argues that the district court erred in construing the "graphical objects" claim limitation to exclude text. Luma argues that nothing in the specification excludes text from the ambit of graphical objects, particularly in light of the fact that, as noted in the specification, modern computer operating systems treat text as pictures of letters (e.g., anti-aliased text). Luma also asserts that even if the district court's construction

were correct, it has presented sufficient evidence to create a triable issue of fact as to whether the appellees' accused products infringe under the narrower construction.

Appellees respond that the district court correctly construed the limitation in light of its use in the specification and the prosecution history of the patent. Appellees argue that both the specification and the prosecution history treat text and "graphical objects" as two distinct forms of more general "visual representations." Appellees add that Luma has failed to point out any evidence that would create a genuine issue of material fact as to infringement under the district court's construction.

We review claim construction de novo on appeal. Cybor Corp. v. FAS Tech., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). "We review a district court's grant of summary judgment of noninfringement without deference and draw all reasonable factual inferences in favor of the nonmovant." Elbex Video, Ltd. v. Sensormatic Elec. Corp., 508 F.3d 1366, 1370 (Fed. Cir. 2007).

We conclude that the district court correctly construed the limitation "graphical objects" to exclude text alone. We begin by considering the language of the claims because "the claims themselves provide substantial guidance as to the meaning of particular claim terms." Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) (citations omitted). The language of claim 14 indicates that "graphical objects" are a subset of the more general category of "visual representations," but provides no insight as to the inclusion or exclusion of text as part of "graphical objects." Dependent claim 15 indicates that "text" is a subset of the category "visual representations" as well but does not indicate the relationship between "text" and "graphical objects."

We turn next to the specification in order to determine if it provides a clearer indication of the scope of "graphical objects." "[C]laims must be read in view of the specification, of which they are a part." Id. at 1315 (quotations and citation omitted). We find the specification to be indeterminate as to whether one of ordinary skill in the art would understand "graphical objects" to include text alone. Several passages from the specification indicate by their grammatical structure that "graphical objects" and "text" are different things. For example, the inventor stated, "The one or more visual representations may include text that is anti-aliased for improved appearance, graphical objects, or an additional image or images that may be obtained from an additional input device." '801 patent col.2 ll.33-36; see also col.17 ll.45-48 ("[p]rompting is performed via a graphical object or a text clue imposed on the displayed image"); id. at col.19 ll.56-59 ("the operator . . . selects the text or graphical objects with which to annotate the image"). The use of the disjunctive "or" suggests that "graphical objects" and "text" are alternatives rather than overlapping categories.

However, other parts of the specification blur the line between "graphical objects" and "text." For example, after stating that an "input device" is used "to locate the text or graphical object" on an image, the patent adds that "[o]bject attributes such as font, color, and size can be selected manually or may be supplied by [the] preference database." Id. at col.19 ll.59-63. The antecedent of the word "object" would seem to be "graphical object" and yet the specification refers to the "font" of the object—an attribute commonly associated with text. Similarly, the specification explains that "[a]nti-aliased text is used extensively throughout the interactions with the system. The anti-aliased text uses broadcast standard anti-aliasing technology in which text and background

colors are manipulated on a pixel by pixel basis to give the illusion of smooth transition and well-defined text borders . . . ." Id. at col.19 ll.12-17; see also col.19 ll.30-34 (explaining that "raster anti-aliased text" uses "a color map picture for each letter"). On balance, however, the specification supports the district court's claim construction.

Turning to the prosecution history, we find information that is more conclusive that would influence one of ordinary skill in the art's understanding of "graphical objects." "[A] court should also consider the patent's prosecution history, if it is in evidence. . . . Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." Philips, 313 F.3d at 1318. The originally filed version of claim 14 (designated claim 21) did not include the language "said one or more visual representations comprising graphical objects" at the end of the "preference database" clause. Also, a dependent claim (designated claim 22) added the limitation "wherein said one or more visual representations comprise text." The examiner rejected each of those claims (21 and 22) as anticipated under 35 U.S.C. § 102(b). However, the examiner stated that a second claim dependent from claim 21 (designated claim 24) recited allowable subject matter if rewritten in independent form. Claim 24 added the limitation "wherein said one or more visual representations comprise graphical objects." The patentee did not traverse the rejection and rewrote claim 24 as suggested by the examiner, which then became claim 14 of the '801 patent. Given that claim 22 that was limited to text was rejected as anticipated while claim 24 that was limited to graphical objects was not, the examiner clearly understood graphical objects not to include text alone. The patentee acquiesced in that understanding by

amending his claims in the manner suggested.  Thus, we conclude that the district court correctly construed the limitation "graphical objects" to exclude text alone.

Luma further contends that summary judgment of noninfringement was nonetheless improper because it had submitted sufficient evidence to create a genuine issue of fact as to infringement even under the district court's construction excluding text.  Even construing the facts in the manner most favorable to Luma, we agree with the district court that Luma has failed to indicate any genuine issues of material fact with respect to the "preference database" of "visual representations comprising graphical objects."  The problem with the very vague marketing materials cited by Luma as support for its argument is that they only reference one out of many linked limitations necessary to meet the claim limitations.  Customization alone is insufficient.  Likewise, status icons alone that may or may not be customizable (i.e., capable of pre-stored preferences associated with a user or type of procedure) are insufficient to meet Luma's burden.  The claims require that pre-stored preferences for the addition of graphical objects to an input image for output to an output device be applied according to information retrieved from a pre-stored database and associated with a particular user or procedure type.  Even considered together, the materials referenced by Luma do not indicate this combination of elements in the accused devices.

## II.  Still Frame Buffer Claims

Luma argues that the district court's grant of summary judgment of invalidity was based upon an incorrect construction of the claim 44 limitation "temporarily store" as it relates to the "still frame buffer."  Luma argues that to "temporarily store" an image requires more than pausing a single frame of the live video feed from a camera.

Instead, Luma argues, it must be possible for the "still frame buffer" to recall the frozen image (rather than retrieve it from "long-term" memory) even after returning to a continuous display of the video feed from the input. Luma argues that this understanding is necessary to give useful meaning to the words "temporarily store." Luma also argues that several statements in the specification support that interpretation.

Appellees respond that Luma has resorted to reading a nonexistent limitation into the claims in order to distinguish the prior art. They argue that there is no language in the claims setting a time limit for storage of the frozen image in the "still frame buffer" and that there is absolutely no support in the specification for a requirement that an image be retrievable from the "still frame buffer" after a return to a display of the continuous input.

We agree with the district court and appellees that Luma's proposed interpretation lacks support in both the claims and the specification. "Anticipation is a question of fact, but, in reviewing a grant of summary judgment of invalidity for anticipation, we determine <u>de novo</u> whether the evidence creates genuine issues of material fact that should have precluded summary judgment." <u>Ormco Corp. v. Align Tech., Inc.</u>, 498 F.3d 1307, 1319 (Fed. Cir. 2007) (citations omitted). Here, Luma has not challenged the undisputed facts relied upon by the district court, but only the court's construction of the limitation "still frame buffer." As noted previously, we review issues of claim construction <u>de novo</u>.

The claims include no reference to a temporal limitation on the storage of an image. Nor do the claims make any reference to recall of a previously temporarily

stored image.  Furthermore, the portions of the specification cited by Luma are inapposite.  Nothing in the specification describes or suggests preserving the image in the still frame buffer once the output returns to display of the live images.  In particular, Luma points to the description of the review function in columns 16-17 of the '801 patent.  However, nothing in that passage describes a form of intermediate storage.  In fact, the specification states that the "review function operates quickly, thereby allowing [the] surgeon to see what's already in memory."  Claim 44 describes "memory" as the location of "long-term" storage, not "temporary" storage.  In addition, Figure 6 of the patent has a box labeled "Review" with an arrow pointing to another box that reads "[a]ssemble and display all images as a result of save command."  '801 patent Fig. 6 (emphasis added).  Whatever the inventor's intention may have been with respect to the "still frame buffer," the position articulated by Luma is not supported by the specification and not consistent with what was actually claimed.

Because we affirm the district court's construction of the "still frame buffer," we conclude that the court's grant of summary judgment of invalidity of claims 44 and 45 for anticipation was correct.

III.  KSEA's Cross-appeal for Attorney Fees

"The determination of whether a case is exceptional and, thus, eligible for and warranting an award of attorney fees under § 285 is a two-step process in which the district court must (1) determine whether there is clear and convincing evidence that a case is exceptional, a factual determination reviewed for clear error, and (2) if so, then determine in its discretion whether an award of attorney fees is justified, a determination that we review for an abuse of discretion."  Diego, Inc. v. Audible, Inc., 505 F.3d 1362,

1366 (Fed. Cir. 2007) (<u>citing</u> <u>Cybor</u>, 138 F.3d at 1460).  KSEA's arguments amount to a disagreement with the district court about the objective reasonableness of Luma's litigation positions and the vexatiousness of its litigation conduct.  Such differences of opinion without sufficient underlying evidence fall far short of demonstrating either clear error in a finding requiring clear and convincing evidence in the first instance or an abuse of discretion in the second instance.  We therefore affirm the district court's denial of KSEA's motion for attorney fees.

## CONCLUSION

For the foregoing reasons, we affirm the district court's entry of summary judgment of noninfringement for the Preference Database claims and of invalidity for the Still Frame Buffer claims.  We also affirm the district court's denial of KSEA's motion for attorney fees.