ADAPTIX, INC.

v.

HUAWEI TECHNOLOGIES CO. LTD., et al.

Adaptix, Inc.

v.

Huawei Technologies Co. Ltd., et al.

Adaptix, Inc.

v.

Huawei Technologies Co. Ltd., et al.

Adaptix, Inc.

v.

ZTE Corporation, et al.

Adaptix, Inc.

v.

ZTE Corporation, et al.

Adaptix, Inc.

v.

ZTE Corporation, et al.

Adaptix, Inc.

v.

ZTE Corporation, et al.

No. 6:13cv438, No. 6:13cv439, No. 6:13cv440, No. 6:13cv441, No. 6:13cv443,

No. 6:13cv444, No. 6:13cv445, No. 6:13cv446

United States District Court,
E.D. Texas, Tyler Division.

Signed November 20, 2014

Anthony Louis Miele, Daniel McGonagle, Hayes Messina Gilman & Hayes LLC, Boston, MA, Keith Bryan Smiley, Charles Craig Tadlock, Tadlock Law Firm, Plano, TX, Kevin Gannon, Paul J. Hayes, Steven E. Lipman, Hayes Messina Gilman & Hayes LLC, Samiyah Diaz, Hayes Bostock & Cronin, LLC, Andover, MA, for Adaptix, Inc.

Li Chen, Steven Charles Malin, John Patrick Wisse, Lauren Gail Grau, Tung Thanh Nguyen, Sidley Austin LLP, James C. Williams, Morgan E. Grissum, Douglas Mark Kubehl, Baker Botts LLP, Dallas, TX, Bryan Alan Blumenkopf, Erik John Carlson, Jeffrey M. Olson, Sidley Austin, Los Angeles, CA, Earl Glenn Thames, Jr., Potter Minton, A Professional Corporation, Tyler, TX, Jennifer C. Tempesta, Baker Botts, New York, NY, for Huawei Technologies Co. Ltd., et al.

## MEMORANDUM ORDER ADOPTING REPORT AND RECOMMENDATION

MICHAEL H. SCHNEIDER, UNITED STATES DISTRICT JUDGE

The above cases have been referred to United States Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636. The September 19, 2014 Report of the magistrate judge which contains her proposed findings of fact and recommendations for the disposition of such actions has been presented for consideration. Before the Court are the following:

(1) Defendants Huawei Technologies Co., Ltd., Huawei Technologies USA, Inc., Huawei Device USA Inc., Cricket Communications, Inc. d/b/a Cricket Wireless, T–Mobile USA, Inc., MetroPCS Communications, Inc., and MetroPCS Wireless, Inc.'s Objections to September 19, 2014 Report and Recommendation of the Magistrate Judge, filed in 6:13cv438, –439, –440, and –441 (Dkt. Nos. 110, 105, 112, 93);

(2) Defendants ZTE (USA) Inc., Boost Mobile LLC, T–Mobile USA, Inc., Sprint Spectrum L.P., and U.S. Cellular Corporation's Objections to Report and Recommendation of the United States Magistrate Judge, filed in 6:13cv443, –444, –445, and –446 (Dkt. Nos. 99, 98, 103, 83);

(3) Plaintiff's Objections to Report and Recommendation Regarding Summary Judgment of Invalidity Under 35 U.S.C. § 112(b) (Dkt. Nos. 111, 104, 113, 94, 100, 99, 104, 84);

(4) Plaintiff's Opposition to Defendants' objections; and

(5) Defendants' Response to Plaintiff's objections.

The Court has conducted a *de novo* review of the magistrate judge's findings and conclusions.

## BACKGROUND

Plaintiff Adaptix, Inc. ("Plaintiff") brings suit alleging infringement of United States Patents No. 6,947,748 (" '748 patent") and 7,454,212 (" '212 patent") (collectively, the "patents-in-suit"). On August 15, 2014, Defendants moved for summary judgment, asserting claims 8, 11, 19, and 21 of the '748 patent, and claims 9, 11, 18, and 26 of the '212 patent are indefinite and therefore invalid under 35 U.S.C. § 112. Defendants presented three indefiniteness arguments, two of which were presented in *Adaptix, Inc. v. AT & T Mobility LLC, et al.*, and related cases. Cause No. 6:12cv17; *see also* Cause Nos. 6:12cv20, – 120 ("*AT & T* ").[1] In their current motions, Defendants argue the Supreme Court's recent decision in *Nautilus, Inc. v. Biosig Instruments, Inc.*, — U.S. ——, 134 S.Ct. 2120, 189 L.Ed.2d 37 (2014) "modified the analysis and increased the level of specificity required to overcome a challenge for indefiniteness." Cause No. 6:13cv438, Dkt. No. 81 at pg. 5.

In *Nautilus*, the Supreme Court held that the claims, read in light of the specification and the prosecution history, must inform a person of skill in the art of the scope of the invention with reasonable certainty. *Id.* at 2129. *Nautilus* rejected the Federal Circuit's "amenable to construction" and "insolubly ambiguous" tests, holding that a standard which "tolerates some ambiguous claims but not others[ ] does not satisfy the statute's definiteness requirement." *Id.* at 2130. *Nautilus* makes clear that "[i]t cannot be sufficient" to "ascribe some meaning to a patent's claims; the definiteness inquiry trains on the understanding of a skilled artisan at the time of the patent application, not that of a court viewing matters post hoc." *Id.*

## REPORT AND RECOMMENDATION

### Sections IV.A and IV.C

Pursuant to the definiteness requirements set forth in *Nautilus*, Defendants sought summary judgment that the term "each cluster" in claim 8 of the '748 patent and claim 9 of the '212 patent lacks an antecedent basis and does not, when "viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." Cause No. 6:13cv438, Dkt. No. 81 at pgs. 4–5. Specifically, Defendants argued that "the claims do not describe which 'subcarriers' belong to 'each cluster.' "

In Section IV.A of the Report and Recommendation, the magistrate judge found *ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374 (Fed.Cir.2003) weighed against finding that the term "each cluster" can stand on its own, without any antecedent basis, particularly in the absence of any "narrowing construction" under *Exxon Research & Eng'g Co. v. U.S.*, 265 F.3d 1371 (Fed.Cir. 2001).

In light of *Nautilus* having abrogated the "narrowing construction" portion of *Exxon* upon which the Court relied in *AT & T*, the magistrate judge concluded that

---

1. In those related cases, the magistrate judge entered a Report and Recommendation on March 24, 2014, recommending the defendants' motion for summary judgment of invalidity based on indefiniteness be granted as to claims 2–4 of the '212 patent but denied as to claims 8–9, and 11 of the '748 patent and claims 9–10 of the '212 patent. The undersigned overruled the objections to the Report and Recommendation, adopting the Magistrate Judge's Report as the findings and conclusions of the Court. *See* Civil Action No. 6:12–CV–17, Dkt. No. 197, 5/29/2014 Order. Defendants have moved for reconsideration, asserting the "tide has changed significantly in the wake of the *Nautilus* decision" and claims 8–9 and 11 of the '748 patent and claims 9–10 of the '212 patent are indefinite. *Id.*, Dkt. No. 202 at pg. 1.

the disputed term "each cluster" requires an antecedent basis but lacks any clear antecedent basis. According to the magistrate judge, this lack of clear antecedent basis for "each cluster" renders the claims indefinite as failing to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134 S.Ct. at 2129.

Defendants also argued with respect to "the indication" limitation that claims 11 and 26 of the '212 patent are indefinite for the same reason the Court rendered claim 2 of the '212 patent insolubly ambiguous in the *AT & T* decision—the lack of clear antecedent basis. In Section IV.C, the magistrate judge agreed with Defendants, finding claims 11 and 26 of the '212 patent suffer from the same antecedent basis ambiguity as claims 2–4. For the same reasons the Court in *AT & T* found claims 2–4 of the '212 patent invalid as indefinite, the magistrate judge recommended the Court find claims 11 and 26 of the '212 patent invalid as indefinite.

**Plaintiff's objections to Section IV.A and IV.C**

With regard to "each cluster," discussed in Section IV.A of the Report and Recommendation, Plaintiff relies on the Court's earlier ruling in the *AT & T* cases, wherein it adopted the magistrate judge's contrary recommendation that the claim was not indefinite because the term "each cluster" does not require any antecedent basis. Noting the magistrate judge appears to base her change of opinion on the Supreme Court's abrogation of a court's ability to make a narrowing construction, Plaintiff asserts *Nautilus* did not abrogate, or even mention, narrowing constructions. According to Plaintiff, *Nautilus* does not prohibit the Court from making a narrowing construction in these cases, even were such a construction required. In any event,

Plaintiff asserts the Court's prior construction ("a logical unit that contains at least two physical subcarriers") satisfies the "reasonable certainty" requirement of *Nautilus*.

According to Plaintiff, each "cluster" of subcarriers sending feedback information to the base station has an antecedent basis in the "candidate subcarriers." Plaintiff argues *ResQNet's* construction of "each," as used in that case to mean "every" (or "all"), does not alter the fact that "each cluster" is still able to stand on its own and is understandable to one of ordinary skill with "reasonable certainty" as required by *Nautilus*. Plaintiff also takes issue with the Report and Recommendation's failure to mention how one of ordinary skill in the art would interpret "each cluster."

Regarding the magistrate judge's recommendation that the term "indication" in claims 11 and 26 of the '212 patent is indefinite for the reasons set forth in the *AT & T* decision with respect to claims 2–4 of the '212 patent, Plaintiff argues the Court's prior reasoning with respect to claims 2–4 does not control with respect to claims 11 and 26. According to Plaintiff, the references to "indication" in claims 11 and 26 are to indications that are sent in the "downlink" direction, whereas the references in claims 2–4 are to indications being sent from the subscriber unit to the base station. Plaintiff therefore urges that "the indication" has its antecedent in the independent claims wherein "an indication" and "another indication" refer to the same iterative step of notifying the subscriber unit of the designated set of subcarriers.

**Section IV.B**

Finally, Defendants sought summary judgment that the terms "desired for use" in claims 11, 19, and 21 of the '748 patent[2]

---

**2.** According to Defendants, Plaintiff has since dropped claims 11 and 19 of the '748 patent.

and claim 18 of the '212 patent, and "desires to employ" in claims 8 and 21 of the '748 patent are indefinite because they are "completely dependent on a person's subjective opinion." *Datamize LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed.Cir.2005). In Section IV.B of the Report and Recommendation, the magistrate judge recommended denying Defendants' motion as to these terms. The magistrate judge, in effect, construed "desired" to mean "requested" and "desires" to mean "requests." Report and Recommendation at pgs. 845–46.

**Defendants' objections to Section IV.B**

Defendants object to Section IV.B of the Report and Recommendation. According to Defendants, although the Report and Recommendation nominally cites to the *Nautilus* standard, it does not apply the new standard but uses the analysis from the pre-*Nautilus AT & T* decision. Defendants assert as an initial matter that the Report and Recommendation's interpretation of "selecting a set of subcarriers/clusters" as "requesting/requesting use of those subcarriers or clusters" improperly reads the term "desires/d" out of the claim.

Defendants further assert the magistrate judge, contrary to *Nautilus,* effectively rewrote the claims to require "requested for use/requests to employ" rather than "desired for use/desires to employ." According to Defendants, if invalidity can be avoided only by redrafting an otherwise indefinite claim, then the courts would "tolerate imprecision" and "diminish the definiteness requirement's public-notice function and foster the innovation-discouraging 'zone of uncertainty,' ... against which [the] Court has warned." *Nautilus,* 134 S.Ct. at 2123. Defendants contend the specification does not disclose how the subscriber would go about determining a desired coding/modulation rate, only that it does so.

Relying on *Interval Licensing LLC v. AOL, Inc.,* 766 F.3d 1364 (Fed.Cir.2014), Defendants assert the specification does not provide "a reasonably clear and exclusive definition" to provide an objective boundary. Defendants argue there is no "objective anchor" for "desires to employ," making this term indefinite.

To the extent the Court denies Defendants' Motion for Summary Judgment of Indefiniteness, Defendants request that the Court clarify whether the issue of indefiniteness of the terms "desires to employ" and "desired for use" remains an issue for trial or whether the Court will enter Judgment as a Matter of Law against Defendants on these issues.

## DE NOVO REVIEW

In their objections to the Report and Recommendation, Defendants present the same arguments regarding "desired for use" and "desires to employ" that were presented to the magistrate judge. The Court finds that the Report and Recommendation did not improperly rewrite the claims, read out the "desired" limitation, or engage in a "narrowing construction." The magistrate judge expressly applied the *Nautilus* standard and found these claim terms, viewed in the light of the specification, inform those skilled in the art regarding the scope of the '748 patent and the '212 patent with "reasonable certainty." Indeed, *Nautilus* itself acknowledged that "absolute precision is unattainable." 134 S.Ct. at 2129.

The Court also agrees with the magistrate judge that "[c]onstruing a term so as to steer clear of subjectiveness or indefiniteness does not ... amount to a finding that the word 'desired' necessarily renders a claim indefinite." Report and Recommendation at pg. 845. The magistrate judge properly found the claims and the specification provide context in which "desired" refers to what is being requested.

Finally, Defendants request clarification as to whether the issue of indefiniteness of the terms "desires to employ" and "desired for use" remains an issue for trial or whether the Court will enter Judgment as a Matter of Law against Defendants on these issues. Because the question of indefiniteness is a question of law for the Court as part of claim construction, the present Memorandum Order Adopting Report and Recommendation resolves the parties' disputes as to indefiniteness such that these issues are not reserved for trial. *Datamize,* 417 F.3d at 1347 ("A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims.") (citations and internal quotation marks omitted).

Turning to Plaintiff's objections, regarding "each cluster," *Nautilus* abrogated the use of a "narrowing construction" to avoid a finding of indefiniteness. Indeed, the Supreme Court explicitly identified the "narrowing construction" standard in a footnote when finding that the standards set forth by the Court of Appeals for the Federal Circuit were "falling short." *See* 134 S.Ct. at 2130 n. 9. Plaintiff's arguments to the contrary are unavailing. Applying the new standard under *Nautilus,* the recited "set of candidate subcarriers" is not an explicit antecedent basis and is not a reasonably clear implicit antecedent basis. Thus, "each cluster" lacks any clear antecedent basis. Finally, Plaintiff has failed to demonstrate any requirement for deference to expert opinions as to whether a person of ordinary skill in the art would find a claim indefinite. *See Phillips v. AWH Corp.,* 415 F.3d 1303, 1318 (Fed.Cir. 2005) ("[A] court should discount any expert testimony that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the pat-

ent.") (citation and internal quotation marks omitted).

As to Plaintiff's objections regarding the term "the indication," Plaintiff has failed to demonstrate that claims 11 and 26 of the '212 patent are distinguishable from claim 2 of the '212 patent in any relevant manner. In particular, although Plaintiff argues that claim 2 refers to uplink but claims 11 and 26 refer to downlink, any such distinction does not ameliorate the facial ambiguity as to whether the antecedent basis for "the indication" in the dependent claims is "an indication" or "another indication" in the independent claims. Plaintiff's argument that "an indication" and "another indication" refer to the same step in an iterative process is unavailing because even under Plaintiff's interpretation, different iterations may yield different indications.

The Court, having reviewed the relevant briefing, the Report and Recommendation, the objections, and the responses to the objections, is of the opinion the findings and conclusions of the magistrate judge are correct. Therefore, the Court hereby adopts the Report of the United States Magistrate Judge as the findings and conclusions of this Court. Accordingly, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment of Invalidity Based on Indefiniteness Under 35 U.S.C. § 112(b) (Dkt. Nos. 81, 75, 85, 68, 76, 75, 78 & 60) are **GRANTED** as to claim 8 of the '748 patent and claims 9, 11, and 26 of the '212 patent but are otherwise **DENIED.**

It is **SO ORDERED.**

### *REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*

CAROLINE M. CRAVEN, UNITED STATES MAGISTRATE JUDGE

Before the Court is the following pend-

ing motion: [1] Defendants' Motion for Summary Judgment of Invalidity Based on Indefiniteness Under 35 U.S.C. § 112(b) (Docket Entry # s 81, 75, 85, 68, 76, 75, 78 & 60). The Court, having reviewed the relevant briefing and hearing arguments September 11, 2014, recommends Defendants' motion be **GRANTED** as to claim 8 of the '748 patent and claims 9, 11, and 26 of the '212 patent but should be otherwise **DENIED**.

## I. BACKGROUND

Plaintiff Adaptix, Inc. ("Plaintiff") brings suit alleging infringement of United States Patents No. 6,947,748 (" '748 patent") and 7,454,212 (" '212 patent") (collectively, the "patents-in-suit"). Defendants move for summary judgment, asserting claims 8, 11, 19, and 21 of the '748 patent, and claims 9, 11, 18, and 26 of the '212 patent are indefinite and therefore invalid under 35 U.S.C. § 112. Defendants present three indefiniteness arguments,[2] two of which were presented in *Adaptix, Inc. v. AT & T Mobility LLC, et al.,* and related cases. Civil Action No. 6:12–CV–17; *see also* Civil Action Nos. 6:12–CV–20, –120 (*"AT & T"*). The Court entered a Report and Recommendation on March 24, 2014, recommending the defendants' motion for summary judgment of invalidity based on indefiniteness be granted as to claims 2–4 of the '212 patent but denied as to claims 8–9, and 11

of the '748 patent and claims 9–10 of the '212 patent. *See id.,* Dkt. No. 182. Judge Schneider overruled the objections to the Report and Recommendation, adopting the Magistrate Judge's Report as the findings and conclusions of the Court. *See id.,* Dkt. No. 197, 5/29/2014 Order.

In their current motion, Defendants argue, among other things, the Supreme Court's recent decision in *Nautilus, Inc. v. Biosig Instruments, Inc.,* —— U.S. ——, 134 S.Ct. 2120, 189 L.Ed.2d 37 (2014), which was handed down after *AT & T,* "modified the analysis and increased the level of specificity required to overcome a challenge for indefiniteness." Dkt. No. 81 at 5.[3]

## II. INDEFINITENESS

Title 35 U.S.C. § 112(b) articulates that patent claims must particularly point out and distinctly claim the invention. "Whether a claim meets this definiteness requirement is a matter of law." *Net Navigation, LLC v. Cisco Systems,* No. 4:11–cv–660, 662, 2012 WL 6161900, at *2 (E.D.Tex. Dec. 11, 2012) (citing *Young v. Lumenis, Inc.,* 492 F.3d 1336, 1344 (Fed. Cir.2007)). A party challenging the definiteness of a claim must show it is invalid by clear and convincing evidence. *Id.* at 1345.

---

1. The above-referenced cases were referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636.

2. At the September 11, 2014 hearing, Defendants argued a fourth issue regarding "subscriber units" as used in claim 18 of the '212 patent. However, Defendants only raised this fourth issue in two sentences in a footnote in their motion for summary judgment. The Court finds Defendants failed to properly raise the issue in the briefing before the Court, and the Court does not consider at this time whether claim 18 is also invalid as indef-

inite because it recites "wherein the subscriber unit submits updated feedback information after being allocated the set of *subscriber units* to receive an updated set of subcarriers and thereafter receives another indication of the updated set of subcarriers."

3. In *AT & T,* Defendants have filed a motion for reconsideration of their motion for summary judgment of invalidity based on indefiniteness, asserting that under the more stringent standard pronounced in *Nautilus* claims 8–9 and 11 of the '748 patent and claims 9–10 of the '212 patent are indefinite.

■ The ultimate issue is whether someone working in the relevant technical field could understand the bounds of a claim. *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir.2010). A claim is not indefinite merely because it poses a difficult issue of claim construction. *Exxon Research & Eng'g Co. v. U.S.*, 265 F.3d 1371, 1375 (Fed.Cir. 2001).

The Supreme Court has recently held that the definiteness requirement of 35 U.S.C. § 112 "require[s] that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134 S.Ct. at 2129. "The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable." *Id.*

■ "The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282. A "determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Exxon*, 265 F.3d at 1376.

It is with these principles in mind the Court considers whether Defendants have demonstrated that the pleadings, affidavits, and other evidence available to the Court establish there are no genuine issues of material fact, and they are entitled to judgment as a matter of law on these specific issues. FED. R. CIV. P. 56(c); *see Celotex v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. DISCUSSION

### A. "each cluster" (claim 8 of '748 patent and claim 9 of the '212 patent)

#### 1. The parties' positions

Defendants argue "the use of the term 'each cluster' lacks an antecedent basis and does not, when 'viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty.'" Dkt. No. 81 at 4–5 (citing *Nautilus*, 134 S.Ct. at 2129). Specifically, Defendants argue "the claims do not describe which 'subcarriers' belong to 'each cluster.'" Dkt. No. 81 at 5.

In *AT & T*, the Court found that "each cluster" did not render the claims indefinite, relying upon a "narrowing construction" under *Exxon*, 265 F.3d at 1375. Defendants submit that *Nautilus* abrogated *Exxon*, thus rendering the "each cluster" term indefinite.

In its response, Plaintiff asserts the indefiniteness standard applied by the Court in *AT & T* comports with *Nautilus*. Dkt. No. 87 at 4 (citing *Bose Corp. v. JBL, Inc.*, 274 F.3d 1354, 1359 (Fed.Cir.2001)). Plaintiff also notes that in *AT & T*, based on a "narrowing construction" of "cluster" as meaning "a logical unit that contains at least two physical subcarriers" (Dkt. No. 87 at 5 (quoting *AT & T*, Dkt. No. 182 at 16)), "this Court has already determined that 'each cluster' does not require antecedent basis." Dkt. No. 87 at 6.

#### 2. Analysis

■ The requirement for antecedent basis is a rule of patent drafting, administered during patent examination. *Konami Corp. v. Roxor Games, Inc.*, 445 F.Supp.2d 725, 737 (E.D.Tex.2006). However, the failure to provide explicit antecedent basis for terms does not always render a claim indefinite. *Id.* (quoting *Manual of Patent Examining Procedure* § 2173.05(e) (8th ed. Rev.2, May, 2004)). Antecedent basis can be present by implication. *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1117 (Fed.Cir.1987); *see Energizer Holdings Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1371 (Fed.Cir.2006) (holding

that "an anode gel comprised of zinc as the active anode component" provided implicit antecedent basis for "said zinc anode"); *see also Ex Parte Porter,* 25 U.S.P.Q.2d 1144, 1145, 1992 WL 392605 (B.P.A.I.1992) ("The term 'the controlled fluid'... finds reasonable antecedent basis in the previously recited 'controlled stream of fluid ...'").

Here, claim 8 of the '748 patent recites (emphasis added):

8. A method for subcarrier selection for a system employing orthogonal frequency division multiple access (OFD-MA) comprising:

a subscriber measuring channel and interference information for a plurality of subcarriers based on pilot symbols received from a base station;

the subscriber selecting a set of candidate subcarriers;

the subscriber providing feedback information on the set of candidate subcarriers to the base station;

the subscriber sending an indication of coding and modulation rates that the subscriber desires to employ for *each cluster*; and

the subscriber receiving an indication of subcarriers of the set of subcarriers selected by the base station for use by the subscriber.

Claim 9 of the '212 patent depends from claim 8, which in turn depends from claim 1. Claims 1, 8, and 9 of the '212 patent recite (emphasis added):

1. A method for subcarrier selection for a system employing orthogonal frequency division multiple access (OFD-MA) comprising:

a subscriber unit measuring channel and interference information for a plurality of subcarriers based on pilot symbols received from a base station;

the subscriber unit selecting a set of candidate subcarriers;

the subscriber unit providing feedback information on the set of candidate subcarriers to the base station;

the subscriber unit receiving an indication of subcarriers of the set of subcarriers selected by the base station for use by the subscriber unit; and

the subscriber unit submitting updated feedback information, after being allocated the set of subcarriers to be allocated an updated set of subcarriers, and thereafter the subscriber unit receiving another indication of the updated set of subcarriers.

\* \* \*

8. The method defined in claim 1 further comprising the base station selecting the subcarriers from the set of candidate subcarriers based on additional information available to the base station.

9. The method defined in claim 8 wherein the additional information comprises traffic load information on *each cluster* of subcarriers.

In *AT & T,* the Report and Recommendation found as follows:

[I]nterpreting 'each cluster' as referring back to 'a set of candidate subcarriers' creates potential inconsistencies with other claim language. For example, claim 8's recitation that the subscriber sends an indication of multiple coding and modulation rates, plural, is seemingly at odds with Plaintiff's proposal that 'each cluster' refers to the entire, potentially singular 'a set of candidate subcarriers.' Further, the word 'each' in the phrase 'each cluster' implies that the claim is referring to more than one 'cluster.'

The Court therefore applies a 'narrowing construction' by interpreting the word 'cluster' in claims 8–9 of '748 patent and claims 9–10 of '212 patent as refer-

ring to a logical unit that contains at least two physical subcarriers. *Halliburton* [*Energy Servs. v. M–I LLC* ], 514 F.3d [1244,] 1253 (Fed.Cir.2008); *see Exxon*, 265 F.3d at 1375 ... ('If a claim is insolubly ambiguous, and no narrowing construction can be properly adopted, we have held the claims indefinite.'). This interpretation gives meaning to the word 'cluster' while avoiding the above-discussed inconsistencies that would arise if 'each cluster' were interpreted as referring back to 'a set of candidate subcarriers.' At the March 5, 2014 hearing, the parties confirmed their mutual understanding that, at least as to claims that recite plural 'subcarriers,' the term 'cluster' refers to two or more subcarriers.

The Court therefore concludes that the term 'each cluster' does not render the claims indefinite. Defendants' motion should accordingly be denied as to claims 8 and 9 of the '748 patent and claims 9 and 10 of the '212 patent.

*AT & T*, Dkt. No. 182 at 15–16.

In overruling the objections to the Report and Recommendation in *AT & T* on this issue, the Court noted:

> Defendants' objections do not address the magistrate judge's statement that interpreting 'each cluster' as referring back to 'a set of candidate subcarriers' creates potential inconsistencies with other claim language. In response to the potential for such inconsistencies, the magistrate judge applied a 'narrowing construction' by interpreting the word 'cluster' as referring to a logical unit that contains at least two physical subcarriers. Such an interpretation appropriately defines the word 'cluster' and allows the term 'each cluster' to

stand on its own. As a result, the term 'each cluster' does not suffer from any ambiguity of antecedent basis because the term does not require any antecedent basis. The Court accordingly finds Defendants' arguments regarding Claims 9–10 of the '212 Patent and Claims 8–9 of the '748 patent unpersuasive.

*AT & T*, Dkt. No. 197 at 3.

On one hand, what the Court construed "narrow[ly]" in *AT & T* was the term "cluster," which the parties in *AT & T* agreed refers to a logical unit that contains at least two physical subcarriers. The Court in *AT & T* concluded the term "each cluster" did not suffer from any lack of antecedent basis because no antecedent basis was required. *AT & T*, Dkt. No. 197 at 3.

On the other hand, in *ResQNet.com, Inc. v. Lansa, Inc.*, the Court of Appeals for the Federal Circuit found that "each" means "every" or "all" as opposed to merely "a":

> [T]he claim recites, 'said ID being generated as a function of the number, location, and length of *each* field in said first image.' This language shows that the claimed algorithm evaluates attributes of each (and *every* ) field in the information to be displayed, i.e., the first image. Accordingly, the [claim] language ... requires the claimed algorithm to use *all* fields in the information from the mainframe.

346 F.3d 1374, 1379 (Fed.Cir.2003) (emphasis added; specification citations omitted); *see id.* at 1378–82.[4] *ResQNet* thus weighs against finding that the term "each cluster" can stand on its own, without any antecedent basis, particularly in the ab-

---

4. *See also* Dkt. No. 74, Plaintiff's Opening Claim Construction Brief at 7 ("Defendants propose that the term "subcarrier selection" be construed as choosing *each* subcarrier.

This construction conflicts with the ordinary meaning of selection, which can include a selection of *just some* items from a given set of items.") (emphasis added).

843

sence of any "narrowing construction" under *Exxon*.

■ On balance, in light of *Nautilus* having abrogated the portion of *Exxon* upon which the Court relied in *AT & T*, the disputed term "each cluster" requires an antecedent basis but lacks any clear antecedent basis. This lack of clear antecedent basis for "each cluster," which has been further explained in *AT & T*, as quoted above, renders the claims indefinite as failing to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134 S.Ct. at 2129.

There being no genuine issues of material fact on this issue, the Court finds Defendants are entitled to judgment as a matter of law and recommends Defendants' motion for summary judgment be granted as to claim 8 of the '748 patent and claim 9 of the '212 patent.

**B. "desired for use" and "desires to employ" limitations (claims 8, 11, 19, and 21 of '748 patent and claim 18 of the '212 patent)**

**1. The parties' positions**

Defendants argue the terms "desired" and "desire" are analogous to the term "aesthetically pleasing" that was found to be "completely dependent on a person's subjective opinion," and therefore indefinite, in *Datamize*. Dkt. No. 81 at 7 (citing *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed.Cir.2005)). Specifically, Defendants argue (citing the declaration of their expert, Dr. Vijay Madisetti, Dkt. No. 81–1):

> With respect to 'desires to employ,' the patent specifications provide an example in which one type of modulation is used when the SINR [ (Signal–to–Interference–plus–Noise Ratio) ] is less than a threshold, and a second type of modulation is used when the SINR is above the threshold. Madisetti Decl., Ex. B,

the '748 patent at 3:34–40. But there is no disclosure of why the subscriber would desire a certain type of coding and modulation or how the threshold is determined. Madisetti Decl. at ¶ 37.

> Likewise with respect to 'desired for use,' the specification merely speaks of a few qualities that subscribers can use to select subcarriers. For instance, part of the specification describes the subscriber selecting a subcarrier with "good performance." Madisetti Decl., Ex. B, the '748 patent at 5:42–43. The specification offers 'high SINR' and 'low traffic loading' as an example. *Id.* But this says nothing about what the subscriber desires as 'good performance.' It is only one possibility among many. In one situation, 'desire' may mean selecting subcarriers that provide the quickest data transfer. In another, 'desire' ma[ ]y mean selecting the greatest amount of subcarriers in order to provide greater redundancy. In another, 'desire' ma[ ]y mean selecting the fewest amount of subcarriers to maximize the number of users. There are too many possibilities that the patent does not disclose for a person of ordinary skill in the art to determine what the subscriber would 'desire.' Madisetti Decl. at ¶¶ 38–39.

Dkt. No. 81 at 8.

Plaintiff responds that referring to "desire" does not automatically render a claim indefinite as Defendants appear to suggest. Dkt. No. 87 at 7. According to Plaintiff, the specification contains support and clarity on what is desired.

**2. Analysis**

The disputed terms appear in claims 8, 11, 19, and 21 of the '748 patent and claim 18 of the '212 patent. Claims 8, 11, 19, and 21 of the '748 patent recite (emphasis added):

8. A method for subcarrier selection for a system employing orthogonal frequency division multiple access (OFDMA) comprising:

a subscriber measuring channel and interference information for a plurality of subcarriers based on pilot symbols received from a base station;

the subscriber selecting a set of candidate subcarriers;

the subscriber providing feedback information on the set of candidate subcarriers to the base station;

the subscriber sending an indication of coding and modulation rates that the subscriber *desires to employ* for each cluster; and

the subscriber receiving an indication of subcarriers of the set of subcarriers selected by the base station for use by the subscriber.

\* \* \*

11. An apparatus comprising:

a plurality of subscribers in a first cell to generate feedback information indicating clusters of subcarriers *desired for use* by the plurality of subscribers; and

a first base station in the first cell, in response to receiving inter-cell interference information, coordinates with other cells to make a cluster assignment decision, the first base station performing subcarrier allocation for OFDMA to allocate OFDMA subcarriers in clusters to the plurality of subscribers based on inter-cell interference avoidance and intra-cell traffic load balancing in response to the feedback information.

\* \* \*

19. An apparatus comprising:

a plurality of subscribers in a first cell to generate feedback information indicating clusters of subcarriers *desired for use* by the plurality of subscribers; and

a first base station in the first cell, the first base station to allocate OFDMA subcarriers in clusters to the plurality of subscribers;

each of a plurality of subscribers to measure channel and interference information for the plurality of subcarriers based on pilot symbols received from the first base station and at least one of the plurality of subscribers to select a set of candidate subcarriers from the plurality of subcarriers, and the one subscriber to provide feedback information on the set of candidate subcarriers to the base station and to receive an indication of subcarriers from the set of subcarriers selected by the first base station for use by the one subscriber, wherein the plurality of subscribers provide feedback information that comprises an arbitrarily ordered set of candidate subcarriers as clusters of subcarriers, and further wherein the feedback information includes an index indication of a candidate cluster with it SINR value.

\* \* \*

21. An apparatus comprising:

a plurality of subscribers in a first cell to generate feedback information indicating clusters of subcarriers *desired for use* by the plurality of subscribers; and

a first base station in the first cell, the first base station to allocate OFDMA subcarriers in clusters to the plurality of subscribers;

each of a plurality of subscribers to measure channel and interference information for the plurality of subcarriers based on pilot symbols received from the first base station and at least one of the plurality of subscribers to select a set of candidate subcarriers from the plurality of subcarriers, and the one subscriber to provide feedback information on the set of candidate subcarriers to the base sta-

tion and to receive an indication of subcarriers from the set of subcarriers selected by the first base station for use by the one subscriber, wherein the one subscriber sends an indication of coding and modulation rates that the one subscriber *desires to employ*.

Claim 18 of the '212 patent recites (emphasis added):

18. An apparatus comprising:

a plurality of subscriber units in a first cell operable to generate feedback information indicating clusters of subcarriers *desired for use* by the plurality of subscriber units; and

a first base station in the first cell, the first base station operable to allocate OFDMA subcarriers in clusters to the plurality of subscriber units;

each of said plurality of subscriber units to measure channel and interference information for the plurality of subcarriers based on pilot symbols received from the first base station and at least one of the plurality of subscriber units to select a set of candidate subcarriers from the plurality of subcarriers, and said at least one subscriber unit to provide feedback information on the set of candidate subcarriers to the base station and to receive an indication of subcarriers from the set of subcarriers selected by the first base station for use by the at least one subscriber unit, and wherein the subscriber unit submits updated feedback information after being allocated the set of subscriber units to receive an updated set of subcarriers and thereafter receives another indication of the updated set of subcarriers.

Defendants submit a definition of "desire" as: "to wish or long for; crave; want;" or "to express a wish to obtain; ask for; request." Dkt. No. 81–6, 8/15/2014 Madisetti Decl., Ex. E, *Random House Webster's Unabridged Dictionary* 539 (2d ed.1998).

In *AT & T*, the Court noted that including the word "desired" in the construction of "select[ing] a set of candidate subcarriers" "would tend to render the claims subjective." *AT & T*, Dkt. No. 180 at 10. The Court concluded that "[s]ubjectiveness or indefiniteness can be readily avoided by focusing on subscriber actions rather than subscriber 'desires.' By selecting a set of subcarriers or clusters, the subscriber is *requesting* use of those subcarriers or clusters, as disclosed in the specification." *Id.*

■ Construing a term so as to steer clear of subjectiveness or indefiniteness does not, however, amount to a finding that the word "desired" necessarily renders a claim indefinite. *See, e.g., Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1316–17 (Fed.Cir.2007) (construing claims reciting "desired" tooth positions). Instead, as found in *AT & T*, the claims and the specification provide context in which "desired" refers to what is being requested. *See AT & T*, Dkt. No. 180 at 10; *see also* '748 patent, 9:37–40 ("Using the ordered list of clusters, the subscriber *requests the desired clusters* along with coding and modulation rates known to the subscriber to achieve desired data rates.") (emphasis added); *id.* at 9:61–64 & Fig 4 (similar); *id.* at 6:42–54 ("For example, the base station first ensures the assignment of the basic clusters to the subscribers and then tries to satisfy further *requests* on the auxiliary clusters from the subscribers.... In one embodiment, the base station allocates basic clusters to a new subscriber and then determines if there are any other subscribers *requesting* clusters. If not, then the base station allocates the auxiliary clusters to that new subscriber.") (emphasis added).

Thus the "claims, viewed in light of the specification ..., inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134

S.Ct. at 2129. Therefore, the Court recommends Defendants' motion for summary judgment be denied as to the terms "desired for use" and "desires to employ."

### C. "the indication" limitation (claims 11 and 26 of the '212 patent)

#### 1. The parties' positions

Defendants argue "Claims 11 and 26 of the '212 patent are indefinite for the same reason the Court rendered claim 2 of the '212 patent insolubly ambiguous—the lack of clear antecedent basis for the term 'the indication.'" Dkt. No. 81 at 9. Plaintiff responds that claims 11 and 26 are different from claim 2 because "they do not include the limitation 'the subscriber unit *sending* 'the indication' to the base station.' Instead, the 'indication of subcarriers' in claims 11 and 26 '*is received* via a downlink control channel.'" Dkt. No. 87 at 9. Plaintiff argues "[t]he 'indication' in claims 11 and 26 refers to both indications—the first and second—in claims 1 and 18." *Id.*

#### 2. Analysis

The claims at issue in *AT & T*, namely claims 2–4 of the '212 patent, depend from claim 1. Claims 1 and 2 of the '212 patent recite (emphasis added):

1. A method for subcarrier selection for a system employing orthogonal frequency division multiple access (OFDMA) comprising:

a subscriber unit measuring channel and interference information for a plurality of subcarriers based on pilot symbols received from a base station;

the subscriber unit selecting a set of candidate subcarriers;

the subscriber unit providing feedback information on the set of candidate subcarriers to the base station;

the subscriber unit receiving *an indication of subcarriers of the set of subcarriers selected by the base station for use by the subscriber unit* ; and

the subscriber unit submitting updated feedback information, after being allocated the set of subcarriers to be allocated an updated set of subcarriers, and thereafter the subscriber unit receiving *another indication of the updated set of subcarriers.*

\* \* \*

2. The method defined in claim 1 further comprising the subscriber unit sending *the indication* to the base station.

In *AT & T*, the Court found claim 2 fails to specify whether "the indication" to be sent by the subscriber is "an indication of subcarriers of the set of subcarriers selected by the base station for use by the subscriber unit" or "another indication of the updated set of subcarriers" recited in claim 1. *AT & T,* Dkt. No. 182 at 17–18.

The claims challenged by Defendants here, namely claims 11 and 26 of the '212 patent, depend from claims 1 and 18, respectively. Claim 1 is quoted above. Claims 11, 18, and 26 of the '212 patent recite (emphasis added):

11. The method defined in claim 1 wherein *the indication* of subcarriers is received via a downlink control channel.

\* \* \*

18. An apparatus comprising:

a plurality of subscriber units in a first cell operable to generate feedback information indicating clusters of subcarriers desired for use by the plurality of subscriber units; and

a first base station in the first cell, the first base station operable to allocate OFDMA subcarriers in clusters to the plurality of subscriber units;

each of said plurality of subscriber units to measure channel and interference information for the plurality of subcarriers based on pilot symbols received from the first base station and at least one of the plurality of subscriber units to select a set of candidate subcarriers from the plurality of subcarriers, and said at least one subscriber unit to provide feedback information on the set of candidate subcarriers to the base station and to receive *an indication of subcarriers from the set of subcarriers selected by the first base station for use by the at least one subscriber unit,* and wherein the subscriber unit submits updated feedback information after being allocated the set of subscriber units to receive an updated set of subcarriers and thereafter receives *another indication of the updated set of subcarriers.*

\* \* \*

26. The apparatus defined in claim 18 wherein *the indication* of subcarriers is received via a downlink control channel between the base station and the at least one subscriber unit.

■ On balance, Defendants have demonstrated that claims 11 and 26 of the '212 patent suffer from the same antecedent basis ambiguity as claims 2–4. Thus, for the same reasons the Court in *AT & T* found claims 2–4 of the '212 patent invalid as indefinite, the Court likewise finds claims 11 and 26 of the '212 patent invalid as indefinite. *See AT & T,* Dkt. No. 182 at 17–18. Therefore, the Court recommends Defendants' motion for summary judgment be granted as to claims 11 and 26 of the '212 patent. For the above reasons, it is

**RECOMMENDED** that Defendants' Motion for Summary Judgment of Invalidity Based on Indefiniteness Under 35 U.S.C. § 112(b) (Docket Entry # s 81, 75, 85, 68, 76, 75, 78 & 60) be **GRANTED** as to claim 8 of the '748 patent and claims 9,

11, and 26 of the '212 patent but should be otherwise **DENIED.**

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. 636(b)(1)(C). Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir.1988).

**SIGNED** this 9th day of September, 2014.